IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Brief July 29, 2013

**STEPHANIE CHRISTMON LEEPER**
**v.**
**KEITH ANTHONY LEEPER**

**Appeal from the Circuit Court of Washington County**
**No. 23588    Thomas J. Wright, Judge**

**No. E2012-02544-COA-R3-CV-FILED-SEPTEMBER 13, 2013**

This is a post-divorce appeal.  In this second appeal, the appellant challenges the trial court's ruling on his obligation as to certain expenses.   After a careful review of the record, we affirm.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the Opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Thomas C. Jessee, Johnson City, Tennessee for Defendant/Appellant Keith Anthony Leeper

No appellate brief filed on behalf of Plaintiff/Appellee Stephanie Christmon Leeper

Defendant/Appellant Keith Anthony Leeper ("Father") and Plaintiff/Appellee Stephanie Christmon Leeper ("Mother") divorced in July 2005. The procedural history of this case prior to the first appeal is set forth in this Court's opinion in 2008. *See Leeper v. Leeper*, No. E2007-02229-COA-R3-CV, 2008 WL 3820768 (Tenn. Ct. App. Aug. 15, 2008). In this opinion, we will outline the facts and proceedings only to the extent necessary for an understanding of the issues raised in this appeal.

Two children were born of this marriage; both have now reached majority. In the 2005 divorce, the children were still minors and Mother was designated as the primary residential parent. *Id.* at *1. At some point, the trial court permitted Mother to relocate to Texas with the minor children. The relocation and other things prompted Father to file several contempt petitions against Mother; he contended that she was alienating the children from him and undermining his relationship with them. *Id*. at *2.

In August 2006, as part of its efforts to get the parties to co-parent and heal Father's relationship with the children, the trial court ordered Mother, Father, and both children to undergo psychological evaluations, at a total cost of $14,400. The trial judge at that time[2] commented that she was "completely aware that this is a very expensive proposition but is convinced that [the designated psychologist] may be the source of last resort in trying to determine what has happened and what can be done in this case." The order required Mother and Father to each be responsible for half the cost of the psychologist's services, in the amount of $7,200 each. The trial judge also commented that although she was "aware that each party strongly feels that the other party is to blame for the current state of events and therefore, should be responsible for the bill, the Court does not agree." Perhaps anticipating future wrangling about the allocation of the expense for the psychological evaluations, the

---

[1]**Rule 10. Memorandum Opinion**

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

[2]The case was originally assigned to Judge Thomas J. Seely, Jr., who "became so frustrated with the parties that he felt it necessary to recuse himself from the case." *Leeper,* 2008 WL 3820768, at *2. The case was transferred to Judge Jean Stanley, who eventually recused herself as well. After that the case was assigned to the current trial judge, the Honorable Thomas Wright, by interchange.

trial court's order added: "Unless it clearly appears to the Court at the conclusion of the evaluation that one party or the other is the sole precipitating factor of the current state of events, these expenses will be shared as herein ORDERED and no further argument about this will be entertained by the Court."

In 2007, after the evaluations were completed, the trial court modified the parenting arrangement to designate Father as the primary residential parent. *Id.* at *3. The trial court described the psychologist's report as not "one-sided," but nevertheless ordered that the "balance of [the psychologist's] bill shall be paid by [Mother]."[3]

Mother appealed the trial court's decision, arguing that she was unaware prior to the trial court proceedings that the question of a potential change in the designation of primary residential parent was before the court. In August 2008, this Court vacated the trial court's designation of Father as the primary residential parent; it held that Mother's due process rights had been violated because Father had not asked the trial court to designate him as the primary residential parent before the hearing. The effect of the appellate court ruling was to return Mother to the status of primary residential parent. *Id*. at *4-5. The appellate court opinion characterized all of the issues raised on appeal by Mother as "attack[ing] the propriety of the order changing custody." It did not refer to the trial court's allocation of the expense for the psychological evaluations, which was part of the order that Mother appealed. *Leeper*, 2008 WL 3820768, at *3.

On remand after the first appeal, the contentious litigation between the parties continued unabated.[4] To address the parties' many financial issues, the trial court appointed a special master. In May 2012, the special master concluded that Father owed a net total of $13,538.58 in child support arrearages and unpaid medical, dental, and health-related expenses.[5] In Father's objections to the special master's report, he argued that some of the bills were not provided to him, that some of the expenses were not covered by the parenting plan, and that

---

[3]At the time this order was entered, little to no balance would likely remain on psychologist's bill as prior to the evaluation each party was required "to pay their $7,200 retainer to the Law Court Clerk on or before October 1, 2006 . . . [o]nce the Court determines that retainer has been paid in full, it will be paid over to [the psychologist] and the evaluation process shall begin." Thus, the trial court's assignment of the balance of this bill to Mother has little to no financial consequence.

[4]The trial court's orders refer to the parties having filed various pleadings and motions that are not included in the record filed in this appeal. For example, one of the trial court's many orders refers to "various competing Motions, . . . particularly the Amended Motion for Contempt and Motion to Set Judgment and Child Support Arrearage." These motions are not included in the appellate record.

[5]These health-related expenses appear to be separate from the cost of the court-ordered psychological evaluations.

many of the expenses were for non-emergency matters that would have required consultation with him.

In November 2012, after a hearing on Father's objections, the trial court entered the order that is the subject of this appeal. In the order, the trial court modified the special master's findings and recommendations in part by ordering Mother to pay a medical bill that the special master had recommended Father pay; otherwise, it adopted the special master's recommendations. The trial court rejected Father's argument that he should not be required to pay child support because of Mother's alleged interference with his parenting time; it held that the total amount of child support due from Father was $9,196. The trial court held Father responsible for $2,049.98 in other outstanding medical and health-related bills, and thus entered a judgment against Father in the total amount of $11,245.98. Father now appeals.

**ANALYSIS**

On appeal, Father argues first that the trial court erred in not requiring Mother to pay the entire cost of the psychological evaluations because her alleged interference with his parenting time necessitated the evaluations.

We note that the November 2012 order that is the subject of this appeal addressed only Father's child support arrearage and his share of certain non-emergency medical and dental expenses. The psychologist fee that the parties paid prior to the evaluations is not referenced in the trial court's November 2012 order addressing Father's objections to the special master's report. Rather, the trial court's allocation of the expense for the psychological evaluation took place before the first appeal in this case and was resolved in the 2007 order that was the subject of the first appeal. In the first appeal, Mother raised several issues regarding the trial court's designation of Father as primary residential parent in that order; Father raised no issues. *Leeper*, 2008 WL 3820768, at *3.

In this second appeal in this matter, we decline to address issues that were addressed in the order that was the subject of the first appeal to this Court in August 2008, pursuant to the law of the case doctrine. The doctrine was explained by our Supreme Court in *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were

actually before the appellate court in the first appeal and to issues that were necessarily decided by implication.

The law of the case doctrine is . . . a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited. This rule promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, [and] fosters consistent results in the same litigation. . . .

Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand.

***Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.***, 975 S.W.2d 303, 306 (Tenn. 1998)(citations omitted); ***see also Creech v. Addington***, 281 S.W.3d 363, 383 (Tenn. 2009) (quoting ***Memphis Publ'g Co.***, 975 S.W.2d at 306). Here, the trial court order that finally resolved the allocation of responsibility for the psychologist fee was entered in 2007; that 2007 order was the subject of the first appeal, decided by this Court in 2008. Father had an opportunity to raise the trial court's allocation of responsibility for the payment of the psychologist's fee in the first appeal and chose not to do so. It is too late for him to do so now. Under the law of the case doctrine, we decline to address the trial court's 2007 allocation of the psychologist's fee for the 2006 evaluation of the family.

Father argues next that the trial court erred in requiring him to pay $2,049.98 in medical and dental expenses because Mother did not consult him before incurring the expenses, as required under the parties' parenting plan. In his appellate brief, Father does not argue that the medical and dental expenses were not necessary and points to no provision in the parenting plan that relieves him of his obligation to pay half of the children's necessary medical and dental expenses in the event that Mother fails to consult him in advance.

After reviewing the appellate record, we find no abuse of the trial court's discretion in declining to relieve Father of his responsibility to pay his share of the subject expenses because Mother allegedly failed to discuss them with Father before the expenses were incurred. This issue is without merit.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Appellant/Defendant Keith Anthony Leeper and his surety, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE